# ANDRE JOSEPH *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.
## (AC 32033)

Bishop, Lavine and Schaller, Js.

Argued January 4—officially released March 22, 2011

*Andre Joseph,* pro se, the appellant (plaintiff).

*Richard T. Sponzo,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* former attorney general, and *Philip M. Schulz,* assistant attorney general, for the appellee (named defendant).

*Opinion*

PER CURIAM. The plaintiff, Andre Joseph, appeals from the judgment of the trial court dismissing his appeal from the decision of the employment security division board of review (board) denying his motion to open the decision of the board. The board denied the plaintiff's motion to open after it adopted the decision of the appeals referee, which affirmed the decision of the defendant administrator of the Unemployment Compensation Act,[1] finding the plaintiff ineligible for unemployment compensation benefits. On appeal, the plaintiff claims that the trial court erred in dismissing his appeal because the board and appeals referee incorrectly determined that he was ineligible for benefits under General Statutes § 31-236 (a) (2) (B).[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. The plaintiff began working for United Healthcare Services, Inc. (United), on July 30, 2007, as a senior accountant. On November 10, 2008, United named Debbie Lee its accounting supervi-

---

[1] The plaintiff's former employer, United Healthcare Services, Inc., and the board were originally named as defendants. Only the named defendant is a party to this appeal.

[2] General Statutes § 31-236 (a) provides in relevant part: "An individual shall be ineligible for [unemployment compensation] benefits . . . (2) . . . (B) if, in the opinion of the administrator, the individual has been discharged or suspended for . . . wilful misconduct in the course of the individual's employment . . . ."

sor. When Lee introduced herself to the plaintiff, he told her that the former accounting supervisor and his coworkers did not know proper accounting methods and accused them of fraud.[3] On December 9, 2008, Lee held a coaching meeting with the plaintiff to train him in the accounting methods she expected him to employ when completing his accounting reconciliations. When the plaintiff sent Lee his work, however, the final product was different from what they had discussed. On December 11, 2008, Lee identified areas to the plaintiff in which she wanted him to improve, including understanding the reconciliation process. The plaintiff continued to send Lee work that was different from what he had been instructed to do.

On December 16, 2008, Lee sent the plaintiff an e-mail invitation to a department meeting, but the plaintiff replied by stating that he would not attend because he thought United was "trying to set him up." On December 18, 2008, Lee sent the plaintiff another e-mail and told him that he needed to complete his reconciliations. One day later she provided the plaintiff with the instructions for completing the reconciliations. The plaintiff was unable to balance the accounts using Lee's methods.

On January 6, 2009, the plaintiff's reconciliations were past due because he was unable to complete his work using the methods Lee had prescribed. Lee sent the plaintiff an e-mail and again explained the methods she wanted him to use. The plaintiff replied to Lee and

[3] On April 28, 2008, United's previous accounting supervisor, Ann Howard, issued the plaintiff a corrective action plan because he was not performing his professional responsibilities, namely, accounting reconciliations, according to her directions. The plaintiff notified the company's management that he believed Howard used improper accounting methods, but Tim Tuohy, United's controller, and Susan Pascutti, United's accounting manger, advised the plaintiff that he was unable to balance the reconciliations because he was not doing them correctly.

wrote that "you do not have the technical accounting skills to be a supervisor and that will be your downfall." Lee responded that she had twenty years of accounting experience, to which the plaintiff wrote that she had twenty years of "non value added experience non contemporary." Lee forwarded this series of e-mails to her supervisor and to accounting manager Susan Pascutti. Lee stated that the plaintiff was insubordinate and requested that he be discharged for failure to follow instructions. United discharged the plaintiff for insubordination on the same day that the e-mails were exchanged.

After he was discharged from his employment, the plaintiff filed for unemployment compensation benefits. On February 9, 2009, the defendant ruled that the plaintiff was ineligible for benefits, pursuant to § 31-236 (a) (2) (B), because he was "discharged by United . . . for deliberate misconduct in wilful disregard of the employer's interest." On February 19, 2009, the plaintiff appealed the defendant's decision to the employment security appeals division, and a hearing was conducted by an appeals referee. The referee dismissed the plaintiff's appeal and affirmed the determination of the defendant, concluding that "[w]hether displaying a poor attitude or making objectionable remarks to the employer constitutes wilful misconduct generally depends on whether the claimant's conduct is spontaneous or deliberate. . . . The [plaintiff's] January 6, 2009 e-mail remarks were offensive. He did not send them during a heated discussion, and no mitigating circumstances excused his conduct. He merely did not want to follow Lee's directions. The [plaintiff] directed these e-mails to Lee to personally insult her and undermine her supervisory authority. . . . Thus, the referee finds [that] the [plaintiff's] January 6 e-mails rise to the level

of wilful misconduct in the course of employment."[4]
(Citation omitted.)

On April 7, 2009, the plaintiff filed an appeal to the board, which adopted the referee's findings of fact and decision. The board also added that "[i]n the case before us, the employer discharged the [plaintiff] immediately after he sent his supervisor two highly insulting and demeaning e-mail messages questioning her accounting and supervisory abilities. . . . [W]e find that the [plaintiff's] refusal to follow the company's format and his attempt to undermine his supervisor's authority by challenging her ability to supervise constituted wilful misconduct."

The plaintiff filed a motion to open the board's decision, claiming that he was discharged as a whistleblower for challenging United's practices. The board denied the plaintiff's motion to open, and the plaintiff appealed the decision to the Superior Court. The defendant filed a motion for judgment dismissing the plaintiff's appeal, which the court granted on January 21, 2010. This appeal followed.

The plaintiff's sole claim is that the court improperly dismissed his appeal of the board's decision because the board and appeals referee incorrectly concluded that he was ineligible for unemployment compensation benefits pursuant to § 31-236 (a) (2) (B). "In appeals

---

[4] The referee also concluded that "the [plaintiff] engaged in ongoing improper conduct. The employer has the right to establish and enforce performance standards in order to achieve an effective operation of the business. Management has the prerogative of monitoring and criticizing the job performance of its employees. . . . An employee's deliberate failure to follow an employer's reasonable request or order constitutes wilful misconduct where the employee does not have good cause to refuse. . . . No evidence demonstrates [that United's previous accounting supervisor, Ann] Howard or Lee used improper accounting methods. The [plaintiff's] inability to balance the reconciliations is not a compelling reason for his refusing to follow Lee's instructions to improve his job performance or attend her meetings." (Citations omitted.)

under . . . [General Statutes] § 31-249b,[5] the Superior Court does not retry the facts or hear evidence but rather sits as an appellate court to review only the record certified and filed by the board of review. . . . The court is bound by the findings of subordinate facts and reasonable factual conclusions made by the appeals referee where . . . the board of review adopted the findings and affirmed the decision of the referee. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the board . . . has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Nonetheless, issues of law afford a reviewing court a broader standard of review when compared to a challenge to the factual findings of the referee." (Citation omitted; internal quotation marks omitted.) *Marquand* v. *Administrator, Unemployment Compensation Act*, 124 Conn. App. 75, 79, 3 A.3d 172 (2010).

In our review of the record, we conclude that the court properly dismissed the plaintiff's appeal because the board and appeals referee did not act arbitrarily or illegally, nor did they abuse their discretion in finding that the plaintiff was ineligible for benefits under § 31-236 (a) (2) (B) for behavior constituting wilful misconduct in the course of employment. United's decision to terminate the plaintiff's employment was precipitated by the plaintiff's sending disparaging e-mails to Lee. The appeals referee concluded, and the board agreed, that the e-mails that the plaintiff sent to Lee insulted her personally and undermined her supervisory authority, and, therefore, his actions rose to the level of wilful

---

[5] General Statutes § 31-249b provides in relevant part: "At any time before the board's decision has become final, any party, including the administrator, may appeal such decision, including any claim that the decision violates statutory or constitutional provisions, to the superior court for the judicial district of Hartford or for the judicial district wherein the appellant resides. . . ."

misconduct in the course of employment.[6] There is sufficient evidence in the record to support this finding.[7]

The judgment is affirmed.

---

[6] General Statutes § 31-236 (a) (16) provides in relevant part: " '[W]ilful *misconduct*' means deliberate misconduct in wilful disregard of the employer's interest, or a single knowing violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied, provided such violation is not a result of the employee's incompetence . . . ."

Furthermore, § 31-236-26a of the Regulations of Connecticut State Agencies provides in relevant part: "(b) To determine that misconduct is deliberate, the [a]dministrator must find that the individual committed the act or made the omission intentionally or with reckless indifference for the probable consequences of such act or omission. . . . (c) To find that deliberate misconduct is in wilful disregard of the employer's interest, the [a]dministrator must find that: (1) the individual knew or should have known that such act or omission was contrary to the employer's expectation or interest; and (2) at the time the individual committed the act or made the omission, he understood that the act or omission was contrary to the employer's expectation or interest and he was not motivated or seriously influenced by mitigating circumstances of a compelling nature. . . ."

[7] The plaintiff argues that he was wrongfully discharged for his effort to correct United's bad accounting practices. Specifically, he claims that he did not follow United's practices because they were improper and illegal. It is unnecessary to consider whether the plaintiff's defiance of his employer's instructions was done in good faith or whether acting in good faith permits the plaintiff to collect unemployment benefits pursuant to § 31-236 (a) (2) (B) because both the board and the referee concluded that United discharged the plaintiff for wilful misconduct as a consequence of the e-mails he sent to Lee on January 6, 2008.